IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANGELA M. MERRIT-SULLIVAN, | |
| Plaintiff, | |
| v. | CIVIL NO.: 12-1784 (MEL) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

**OPINION AND ORDER**

**I.   PROCEDURAL BACKGROUND**

Angela M. Merrit-Sullivan ("claimant" or "plaintiff") was born in 1962, possesses a General Educational Development (GED) degree, and was employed as a retail stocker until January 1, 2007. (Tr. 153; 179; 184.) On August 19, 2007, plaintiff filed an application for Social Security Disability Insurance benefits, alleging disability due to bipolar disorder, fibromyalgia, asthma and osteoporosis. (Tr. 174, 181.) The alleged onset date of disability is August 1, 2007; the end of insurance period or "date last insured" ("DLI") is June 30, 2009. (Tr. 13.) Plaintiff's application was denied initially, as well as on reconsideration. Id. Plaintiff made a timely request for a hearing before an Administrative Law Judge ("ALJ"). Both she and her counsel were present at the November 9, 2010 hearing held in Mayagüez, Puerto Rico. Tr. 26. On December 10, 2010, the ALJ rendered a decision finding plaintiff not to be disabled. Tr. 21. The Appeals Council denied plaintiff's request for review on July 23, 2012, making the ALJ's opinion the final decision of the Commissioner of Social Security ("Commissioner" or "defendant").

On September 21, 2012, plaintiff filed a complaint seeking review of ALJ's decision pursuant to 42 U.S.C. 405(g). ECF No.1. On March 8, 2013, defendant filed an answer to the complaint and a certified transcript of the administrative record. ECF Nos. 7; 8. Both parties have filed supporting memoranda. ECF. Nos. 15; 20. Plaintiff alleges that as a result of the ALJ's disregard for her treating physicians' medical opinions, his decision is not based on substantial evidence. ECF No. 15, at 7. Defendant responds that the ALJ gave plaintiff's treating physicians' opinions little weight because they were not substantiated by treatment notes, thus obscuring the basis for their conclusions, and because they were inconsistent with the record as a whole. ECF No. 20, at 16-19.

## II.   LEGAL STANDARD OF REVIEW

### A.  Scope of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's fact findings are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Irlanda Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B.  Determination of Disability and Residual Functioning Capacity

To establish entitlement to disability benefits, the claimant bears the burden of proving that he or she is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987). An individual is deemed to be disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140-42.  If it is determined that the claimant is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step.  Under steps one through four, plaintiff has the burden of proving that she cannot return to her former job because of her impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam).  Once she has carried out that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform." Id.

In the case before us, plaintiff contests the ALJ's determination of her residual functioning capacity ("RFC") by which, at the fifth and final stage of analysis, she was found not to be disabled. An individual's residual functional capacity is the most that he or she can do in a work setting despite the limitations imposed by her mental and physical impairments.  20 C.F.R. § 404.1545(a)(1).  At this final step, the ALJ evaluates whether the claimant's RFC, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied.  20 C.F.R. § 404.1520(g).

**III.    ANALYSIS**

Plaintiff has a history of mental health issues dating back to at least 1987.  (Tr. 72; 230.) Dr. Brenda Orta-Cardona ("Dr. Orta-Cardona"), a Family Medicine specialist, was plaintiff's treating physician from November 23, 2004 through the DLI, seeing her every three to six months for symptoms related to osteopenia, fibromyalgia, bronchial asthma, arrhythmia, depression, and bipolar disorder.  (Tr. 268-9.)  On June 19, 2009, plaintiff went to Health First Medical Group regarding her osteopenia, reporting a history of fragility fractures and dyspnea. (Tr. 231.)  On June 30, 2009, Plaintiff underwent a bone densitometry test that indicated she had mild bone loss of the hip and normal bone mass of the AP spine.  (Tr. 234.)  The Dr. Kenneth Hamilton at Health First Diagnostic Center recommended that calcium replacement therapy be considered.  Id.

The remainder of the medical evidence in the record is from outside the disability insurance period.  For example, plaintiff began seeing Dr. Norberto Ortiz-Castro ("Dr. Ortiz-Castro"), a Family Medicine specialist, approximately every three months on July 31, 2009.  (Tr. 276.)  In a MEV Report filed on April 5, 2010, Dr. Ortiz-Castro opined that plaintiff suffered from depression, anxiety, and psychological factors affecting her physical condition.  (Tr. 277.) Dr. Ortiz-Castro stated that plaintiff could never lift 10 pounds or more, found significant limitations in her ability to move her head, and stated that plaintiff could never twist, crouch, squat, or climb ladders.  (Tr. 278.)   He opined that plaintiff's pain was severe enough to constantly interfere with her attention and concentration.  (Tr. 277.)  Dr. Ortiz-Castro expressly indicated that the earliest date that this description of symptoms and limitations would apply is July 31, 2009.  (Tr. 279.)  Dr. Orta-Cardona also filed an MEV Report filed on April 13, 2010, in which she opined that plaintiff's pain was severe enough to interfere frequently with her

attention and concentration, and that she had a very limited ability to remain still throughout an eight-hour workday, while also having to walk around every fifteen minutes. (Tr. 269.) Additionally, between November 7, 2009 and October 20, 2010, plaintiff underwent periodic psychiatric evaluations at Mental Health Services Administration. (Tr. 76; 77; 78; 81.)

### A. Treating Physician Rule

When apportioning weight to medical opinions, an ALJ must follow the so-called "treating physician rule." The treating physician rule states that the ALJ will "generally … give more weight to opinions from ... treating sources." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well-supported by *medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight." Id. (emphasis added). If an ALJ does not consider that a treating physician's opinion conforms to the mentioned standards, he will determine the weight to give the opinion according to the following factors: (1) length of treatment relationship; (2) nature and extent of treatment relationship; (3) supportability;[3] (4) consistency; (5) specialization; and (6) other factors that support or contradict the opinion. See 20 C.F.R. § 404.1527(c). When choosing not to give a treating physician's opinion controlling weight, the Social Security Regulations require an ALJ to "give good reasons in our notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In the case of caption, the ALJ's determination that plaintiff's treating physicians' opinions did not merit controlling weight as to the extent of her disability was based on the lack

---

[3] "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3).

6

of treatment notes or other medical evidence in the record to support their assessments and conclusions. (Tr. 19.) The ALJ clearly stated his reason for such determination: "The undersigned does not doubt the existence of the claimant's conditions and the limitations imposed by them, but without supportive evidence the dimensions of clinical ailments and its [*sic*] severity cannot be assessed." Id. Although a lack of treatment notes does not automatically entail the rejection of a treating physician's opinion, the report must otherwise specify the medical basis for the opinion. See Soto-Cedeño v. Astrue, 380 F. App'x 1, 3 (1st Cir. 2010) ("If [the treating physician's] reports explain the basis for his medical opinion, rather than merely stating his conclusions without any support or explanation, then [they are reliable.]"); Vazquez-Rivera v. Comm'r of Soc. Sec., Civ. No. 12-1297 MEL, 2013 WL 1896944, at *6 (D.P.R. May 7, 2013) ("If [the treating physician's] reports explain the basis for his medical opinion, rather than merely stating his conclusions without any support or explanation, then [the consulting physician] appropriately relied on said documents.")

Plaintiff cites Soto-Cedeño v. Astrue in support of the proposition that the absence of treatment notes does not indicate that the opinions of Dr. Orta-Cardona and Dr. Ortiz-Castro (hereinafter the "treating physicians") were not well-supported. ECF No. 15; see also 380 F. App'x at 3 (finding that the ALJ did not give supportable reasons for rejecting a treating source's opinion where, although there were no supporting treatment notes, "the doctor described his observations of [the patient] and the results of specific memory tests he had administered to her at her most recent appointment of October 26, 2004."). This case also emphasizes, however, that an ALJ must give "treating source opinions 'on the nature and severity' of a claimant's impairment 'controlling weight' *if they are 'well-supported by medically acceptable clinical and*

*laboratory diagnostic techniques'….".* Soto-Cedeño v. Astrue 380 F. App'x at 3 (citing 20 C.F.R. § 404.1527(d)(2)) (emphasis added).

In the case of caption, the ALJ gave the opinion evidence of the treating physicians little controlling weight not only because they lacked treatment notes, but lacked other support or explanation, as well. (Tr. 19.) The treating physicians' reports list clinical findings, symptoms, diagnoses, and treatment recommendations. (Tr. 268-74; 276-79.) Although the ALJ found that the assessments and conclusions within the reports were "well detailed," he nonetheless emphasized that "without supportive evidence the dimensions of clinical ailments and its severity cannot be assessed." (Tr. 19.) The only test results included in the record are a cholesterol screening ordered by Dr. Ortiz-Castro conducted on May 28, 2010 (Tr. 275) and a polysomngraphic study performed by performed by Dr. Orta-Cardona on June 16, 2010 (Tr. 280-283), both nearly a year after the DLI and after the reports were completed.[5] There is no indication of what, if any, other tests were performed, interviews were conducted, or other clinical and laboratory diagnostic techniques that were used to reach the many conclusions, which concern numerous medical conditions. Overall, there is a lack of a discernible medical basis for the opinions regarding the severity of plaintiff's impairments in the reports. Therefore, the ALJ did not err in determining they did not merit controlling weight.

---

[5] "Evidence outside of the disability insurance period is ordinarily irrelevant but for those instances in which it can shed some light on claimant's conditions during said period of time." Ramos-Troche v. Comm'r of Soc. Sec., CIV. 12-1334 MEL, 2013 WL 5232125, n. 3 (D.P.R. Sept. 16, 2013), citing Padilla Pérez v. Sec'y of Health & Human Servs., 985 F.2d 552, 1993 WL 21064, at *5 (1st Cir.1993) (unpublished). Plaintiff refers to the polysomonographic study in her memorandum, which demonstrated evidence of moderate obstructive sleep apnea, suggesting that her asthma condition interferes with her sleeping. ECF No. 15. The ALJ also acknowledged this sleep study, noting Dr. Orta-Cardona's findings and recommendations. (Tr. 18.) Although these tests provide some support for Dr. Orta-Cardona's conclusions regarding plaintiff's sleep condition and asthma, Dr. Orta-Cardona ordered the sleep study almost two months after completing the report. (Tr. 272-74.) Therefore, the study does not provide a substitute for treatment notes to support Dr. Orta-Cardona's findings. It does not elucidate how Dr. Orta-Cardona arrived at the findings contained in his report, as she listed her findings and conclusions about plaintiff's conditions prior to conducting the sleep study. Similarly, Dr. Ortiz-Castro ordered the cholesterol screening contained in the record nearly two months after completing his report regarding plaintiff's conditions, and thus it is also insufficient medical support for his findings and conclusions.

Furthermore, the treating physicians' opinions at issue in the case of caption were made after the DLI.  Dr. Ortiz-Castro's assessment exclusively concerned the period after the DLI, as he first treated plaintiff on July 31, 2009.  While Dr. Orta-Cardona did treat plaintiff during the disability insurance period, the medical records included only the report from after the DLI discussed above, which lacked support and explanations for its conclusions.  (Tr. 268.)  The ALJ noted that "[e]xcepting the report mentioning osteopenia, **all the medical evidence in the file**, including the mental evidence, **is after the date last insured**."  (Tr. 19.) (emphasis in original). In deciding what weight to give the treating physicians' opinions the ALJ considered the totality of the circumstances, including: the lack of medical support for the treating physicians' assessments and conclusions, the absence of medical evidence regarding the disability insurance period, and his finding that claimant's own testimony did not add to weight to her allegations. (Tr. 19.)  Overall, the ALJ's decision to give the treating physicians' opinions little controlling weight is supported by substantial evidence and did not violate the treating physician rule.

Although the ALJ has a duty to adequately develop the record, it is understood that plaintiff bears the burden of proof and must also share the burden of faithfully presenting her case by submitting all relevant medical evidence.  42 U.S.C. § 423(5)(A),(B).  Plaintiff's counsel at the administrative proceedings was notified of the need to submit all relevant medical records, and was reminded to submit medical evidence for the disability period prior to the hearing date. (Tr. 293; 304.)   Additionally, plaintiff's treating physicians were instructed to attach "all treatment notes, radiologist reports, laboratory and test results that have not been provided…" (Tr. 268, 276.)   In this case, the ALJ clearly requested medical records from the doctors to support the opinions in their reports.  (Tr. 289-292.)  Therefore, the ALJ did not fail in his duty to adequately develop the record.

### B.  Substantial Evidence

As previously mentioned, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401.  The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence."  Ginsburg, 436 F.2d at 1148.  In this case, the ALJ did base his decision on substantial evidence.

The ALJ afforded significant weight to the agency's physicians and psychologists Dr. Hugo Román ("Dr. Román"), Dr. Vicente Sánchez ("Dr. Sánchez"), Dr. Román Ruiz ("Dr. Ruiz"), and Dr. Luis Umpierre ("Dr. Umpierre") in making the RFC determination.  (Tr. 19.)  All four experts asserted in their opinions that the record was insufficient to either reach a conclusion of disability or to determine the extent of plaintiff's limitations and impairments.  (Tr. 240; 255; 285; 287.)  Dr. Román's report merely checks a box for "insufficient evidence" as to plaintiff's medical disposition, leaving the remainder of the assessment form entirely blank.  (Tr. 240-54.)  His case analysis further re-affirmed his earlier opinion that there was insufficient evidence to support plaintiff's claim for disability because the additional evidence submitted concerned the period after the DLI.  (Tr. 266.)  Dr. Sánchez's assessment states: "The objective evidence available by DLI do [sic]  not support a significant limitint [sic] physical impairment; limited to Densiometry documenting hip OPenia [sic]."  (Tr. 255.)  Dr. Ruiz's report similarly concludes there was, "no evidence that can support the allegations by the DLI, only medical opins [sic] given by Dr. Ortiz but with no imaging studies of physical exam.  Insufficient evidence by DLI to asses [sic] on severity."  (Tr. 285.)  Finally, Dr. Umpierre's report states:

"Careful review of all the medical evidence in the record fail [*sic*] to show relevant additional information. Previous assessment can be adopted as written by DLI."[6] (Tr. 287.)

The four state agency physicians' opinions constituted substantial evidence for the ALJ to base his determination that there was insufficient evidence in the record to support plaintiff's claims "concerning the intensity, persistence and limiting effects of [his] symptoms." Tr. 18. As previously discussed, the opinions of the treating physicians, to the extent that they involved evidence prior to the DLI, were largely unsupported by treatment notes or other medical support or explanation. He accordingly had no basis upon which to judge the veracity of their conclusions. An ALJ is not obliged to include impairments and limitations he does not consider credible in hypotheticals submitted to the Vocational Expert ("VE"). Similia v. Astrue, 573 F. 3d 503, 521 (7th Cir. 2009) (quoting Schmidt v. Astrue, 496 F. 3d 833, 846 (7th Cir. 2007)). Likewise, the ALJ is not obligated to incorporate opinions that he had properly given little controlling weight in forming the hypothetical to the VE. Other than the unsupported conclusions from the treating physicians' reports, no other evidence in the record from the disability insurance period that has been brought to the court's attention substantiates plaintiff's claims regarding the extent of her disability. Accordingly, the ALJ did not ignore substantial evidence by giving more weight to the consensus of the four agency experts that there was insufficient evidence in the record to reach a conclusion as disability. It is not the duty of the court to reverse findings of credibility made by the ALJ supported by the record. See Arias v. Comm'r of Soc. Sec., 70 F. App'x 595, 598 (1st Cir. 2003) ("[T]he resolution of conflicts in the evidence and the ultimate determination of disability are for the ALJ, not the courts."). The

---

[6] It is unclear from the record to which assessment Dr. Umpierre refers or where a copy of said "previous assessment" can be found. Plaintiff does not make reference to an earlier report which the ALJ overlooked or make any other specific arguments regarding Dr. Umpierre's assessment in his memorandum to the court. ECF No. 15.

court is limited to reviewing whether there is substantial evidence in the record to support the ALJ's decision.  In the present case, there is.

### IV.    CONCLUSION

Based on the foregoing analysis, the court concludes that the Commissioner's decision was based it was based on substantial evidence. Therefore, the Commissioner's decision is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of November, 2013.

s/Marcos E. López<br>
U.S. Magistrate Judge